# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RANDALL WILLIAMS,                :

                       Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                       Defendant.          :

Case No. 3:11-cv-200

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B).

Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on July 13, 2007, alleging disability from January 1, 1996, due to mental problems, bad knees, intestinal hernia, and a bad left ankle. *See* PageID 167-69; 182. The Commissioner denied Plaintiff's application initially and on reconsideration. *See* PageID 124-25, 127-29, 133-39. Administrative Law Judge Amelia G. Lombardo held a hearing, (PageID 96-122), following which she determined that Plaintiff is not disabled. PageID 64-75. The Appeals Council denied Plaintiff's request for review, (PageID 41-

43), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Lombardo found that Plaintiff has severe bilateral knee problems, right ankle problems, bipolar disorder, and anxiety/panic disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. PageID 67, ¶ 2, PageID 70, ¶ 3. Judge Lombardo also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. PageID 70, ¶ 4. Judge Lombardo then used section 203.28 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 73-74, ¶ 9. Judge Lombardo concluded that Plaintiff not been under a disability at any time since July 13, 2007, the date Plaintiff filed his application for SSI. PageID 74, ¶ 10.

In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his alleged exertional impairments. (Doc. 7). Accordingly, the Court will focus its review of the record on the mental health evidence.

The record contains a copy of treating physician Dr. Rose's office notes dated January 2002 to December 2009. PageID 565-645, 677-89. Those records reveal that Dr. Rose treated Plaintiff for various medical conditions including rhinitis, stomach-related complaints, and persistent knee/leg pain. *Id.* In addition, Dr. Rose treated Plaintiff for anxiety, irritability, and grief issues. *Id.* In January 2002, Dr. Rose, reported that Plaintiff had trouble with anger and rage control, that he seemed to function best on small doses of Valium, he was improving with treatment, that he had no physical limitations, and that he was employable. *Id.*

Plaintiff underwent substance abuse treatment from February 12 through June 9,

4

2003, at The Center for Alcoholism and Drug Addiction Services ("CADAS"). PageID 264-94. At the time Plaintiff was admitted to the program, his care provider identified Plaintiff's diagnoses as cannabis dependence and cocaine dependence and assigned Plaintiff a GAF of 55. *Id.* Plaintiff's social worker who was involved in his treatment reported that Plaintiff appeared open to the group process and provided positive feedback and support to other group members. *Id.* Plaintiff completed the recommended treatment program and was discharged with the recommendation he obtain the continued support of AA/NA as needed. *Id.*

On August 6, 2007, Plaintiff reported that he had been incarcerated in the county jail for robbery between 2004 and 2006, and that he started taking psychotropic medications just before he was released in 2006. PageID 206.

Plaintiff sought treatment at Samaritan Behavioral Health on July 10, 2006, when he reported that he experienced symptoms of anxiety/panic attacks when his breathing and pulse increased and his mind raced, that he was easily frustrated, he had sweaty hands, he became agitated and angry, was inattentive, and that he experienced "lashing out". PageID 295-311. Plaintiff also reported he had daily mood swings. *Id.* Plaintiff's mental health care provider noted that Plaintiff had an extensive history of legal charges and that he had gone to counselors over the years, but he believed they didn't help him. *Id.* The mental health care provider identified Plaintiff's diagnoses as bipolar disorder, panic disorder with agoraphobia, personality disorder, and polysubstance dependence in early partial control and he assigned Plaintiff a GAF of 40. *Id.*

On July 11, 2006, Plaintiff became a resident of Booth House, a halfway house run by the Salvation Army, where he remained until December 28, 2006. PageID 320-38. At the time Plaintiff began living at Booth House, the evaluator noted that Plaintiff was cooperative with good

5

impulse control, was of average intelligence, and that he had good judgment. *Id.* Plaintiff participated in substance abuse counseling as well as group and individual counseling. *Id*. Plaintiff secured transitional housing and when he left Booth House it was noted that Plaintiff had accomplished sobriety. *Id.*

The record contains Plaintiff's voluminous mental health treatment notes from Eastway Behavioral Healthcare dated July 2006,to May 2009. PageID 396-403, 411-563. Those records reveal that at the time of Plaintiff's initial assessment, the counselor identified Plaintiff's diagnoses as bipolar disorder, panic disorder without agoraphobia, and polysubstance dependence in early remission. *Id.* Psychiatrist Dr. Wee's progress notes indicated that Plaintiff did well on his medications and that Plaintiff had no pressured speech, no hallucinations, no depression, and no suicidal or homicidal ideation. *Id.* In October 2006, Dr. Wee reported that Plaintiff was moderately limited in his abilities to perform most work-related mental activities although he was extremely limited in his abilities to maintain attention and concentration for extended periods and to work and get along with others. *Id.* Dr. Wee reported further that Plaintiff presented with poor attention, pressured speech, and flight of ideas, with anti-social personality traits that caused him to interrupt and want to hurt people. *Id.* Dr. Wee concluded that Plaintiff's mental limitations would last twelve months or more. *Id.*

Plaintiff continued to receive treatment at Eastway for bipolar disorder, panic disorder without agoraphobia, and polysubstance dependence in early remission. *Id.* Over time, Plaintiff's mental health care providers assigned Plaintiff a GAF of 55 to 60. *Id.* On December 12, 2008, psychiatrist Dr. Taylor assumed Plaintiff's treatment at Eastway and Plaintiff was upset about this transfer and reported that he had "not been doing well", that he felt more anxious, more irritable

6

and was not sleeping well, that he had self-discontinued Trazodone, and that he got better results from Lunesta in terms of his sleep. *Id.*

On December 16, 2008, Dr. Taylor opined that Plaintiff was not capable of performing most work-related mental activities on a sustained basis and he acknowledged that he only had treated Plaintiff once, but noted that Plaintiff had received treatment from Dr. Wee since August, 2006. *Id.* Dr. Taylor also reported that Plaintiff had berated him for twenty minutes during his first visit because Dr. Taylor was his new psychiatrist and that his assessment was based in part on Plaintiff's irritability provoked by feedback and his racing thoughts, flight of ideas, and disorganization. *Id.* Dr. Taylor assigned Plaintiff a GAF of 45-50 and opined that Plaintiff had moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, and pace, and that he had experienced three episodes of decompensation. *Id.*

Dr. Taylor's and the Eastway support staff's treatment notes in 2009 indicate that Plaintiff expressed anxiety related to housing, financial, and child custody issues, that at times he appeared calm and less irritable and that at other times Plaintiff displayed increased irritability and anxiety, was upset, paranoid, agitated, and that he reported he was sleeping poorly. *Id.*

Examining psychologist Dr. Boerger noted on October 9, 2006, that Plaintiff graduated from high school, had a "lengthy arrest record", had a history of using crack and powder cocaine, marijuana, alcohol, and pills, had been clean from drugs and alcohol for nine months, and that he last worked in 2006 for a couple of months and quit because he couldn't deal with it and had to stay with his mother. PageID 314-19. Dr. Boerger also noted that Plaintiff's speech was pressured and tangential, his affect was depressed, he reported feeling anxious during the interview

7

and that he had panic attacks, he was alert and oriented, appeared to be aware of his health, emotional, and substance abuse problems, and that he seemed to be of average intelligence. *Id.* Dr. Boerger identified Plaintiff's diagnoses as bipolar disorder NOS, anxiety disorder NOS, and polysubstance dependence in remission and he assigned him a GAF of 49. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was moderately to markedly impaired, his ability to understand and follow instructions was moderately impaired, his ability to maintain attention to perform simple repetitive tasks was unimpaired, his ability to withstand the stress and pressures associated with day-to-day work activity was markedly impaired, and that if Plaintiff were awarded benefits, it would be beneficial for a payee to be appointed because of his history of substance abuse as well as his own admitted difficulty with impulsivity as far as spending money. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting the opinions of treating psychiatrists Drs. Wee and Taylor, by failing to find that he satisfies the Listings, by improperly weighing the opinion of examining psychologist Dr. Boerger, and by relying on the VE's testimony because it was in response to an improper hypothetical question. (Doc. 7).

The Court will address Plaintiff's first and third Errors together.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

8

alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

9

§404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Lombardo rejected Dr. Wee's and Dr. Taylor's opinions that Plaintiff is disabled on the grounds that they are not supported by their clinical notes and are inconsistent with other evidence. PageID 70-71.

Although Dr. Wee opined that Plaintiff's abilities to perform work-related mental activities are extremely limited, his opinion is not supported by his clinical notes. For example,

10

during the period 2006 to 2007 Dr. Wee noted that Plaintiff's thoughts were organized, his speech was normal, and that Plaintiff did not have hallucinations, depression, suicidal ideation, or homicidal ideation. See, *e.g.*, PageID 473, 475, 477, 486, 501, 542, 543, 551. In addition, while Dr. Wee noted on June 11, 2008, that Plaintiff displayed "somewhat pressured speech", (PageID 449), his other clinical notes dated during 2008, reflect generally normal clinical findings. See, *e.g.,* PageID 459-61, 469. Further, during the period 2006-2008, Dr. Wee noted that Plaintiff reported that he was doing well with his medications. See, *e.g.,* PageID 449, 459-61, 469, 473-74, 476-78, 484, 487, 503-04, 542-43, 545.

Dr. Wee's opinion is inconsistent with other evidence of record. First, the Court notes that Plaintiff has never required inpatient hospitalizations or emergency room visits for psychiatric treatment. In addition, Plaintiff's self-reported activities are inconsistent with Dr. Wee's opinion that Plaintiff is disabled. For example, Plaintiff reported he lived alone, was able to care for himself, prepared meals, performed household chores, used public transportation, visited his girlfriend, kept his appointments, attended church, and shopped. See, *e.g.,* PageID 212, 214-15, 317. In addition, prior to his term of imprisonment, he lived with and cared for his sick mother, he sought custody of his young daughter and was responsible for her care, and he regularly visited his "baby's ex". See, *e.g.,* PageID 302, 314, 317, 322. Finally, Dr. Wee's opinion is inconsistent with the reviewing mental health experts' opinions. See PageID 340-56, 379. Under these facts, the Commissioner has an adequate basis for rejecting Dr. Wee's opinion.

Similarly, the Commissioner had an adequate basis for rejecting Dr. Taylor's opinion. First, the Court notes that, as he acknowledged, when Dr. Taylor offered his opinion, he had seen Plaintiff on only one occasion. Furthermore, as with Dr. Wee, Dr. Taylor's opinion is not supported

by his treatment notes. Specifically, during early 2009, Dr. Taylor reported that Plaintiff was more calm and less irritable than he had been on his first visit. See PageID 419, 424, 426. In addition, Dr. Taylor noted that Plaintiff was interested in finding a job and he (Dr. Taylor) encouraged Plaintiff in that regard since his racing thoughts and irritability might stem from Plaintiff having too much idle time, an assessment with which Plaintiff agreed. PageID 419. Finally, over time, Dr. Taylor noted that Plaintiff was doing "OK" and "relatively well", that he was handling stressors in an appropriate manner, and that he was calmer, polite, cooperative, and had normal, logical, and goal-directed speech. See, *e.g.,* PageID 412-13, 415, 419-20, 646, 650, 654, 665.

Additionally, Dr. Taylor's opinion is inconsistent with Plaintiff's self-reported activities, *supra*, as well as the reviewing mental health specialists' opinions. *Supra.*

Plaintiff also takes issue with the Commissioner's weighing of examining psychologist Dr. Boerger's opinion. Judge Lombardo rejected Dr. Boerger's opinion primarily on the basis that is was inconsistent with Dr. Wee's and Dr. Taylor's treatment notes. This Court cannot say that the Commissioner erred in this regard. As noted above, this Court's review of both Dr. Wee's and Dr. Taylor's treatment notes reveal that Plaintiff was, *inter alia,* doing "OK" and "relatively well", that he was handling stressors in an appropriate manner, and that over time he was calmer, polite, cooperative, and had normal, logical, and goal-directed speech, and generally normal clinical findings. Further, as with Drs. Wee and Taylor, Dr. Boerger's opinion is inconsistent with Plaintiff's activities and with the reviewing psychologists' opinions. Accordingly, the Commissioner had an adequate basis for rejecting Dr. Boerger's opinion.

In his second Error, Plaintiff argues that the Commissioner erred by failing to find that he satisfies the Listings.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)). Listing 12.04 requires that a claimant satisfy either both the "paragraph A: and "paragraph B" criteria or satisfy the "paragraph C" criteria. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

While it is true that the reviewing psychologists determined that Plaintiff satisfied the diagnostic "paragraph A" criteria of Listing 12.04, they also determined that Plaintiff did not satisfy the "paragraph B" or the "paragraph C" criteria. PageID 340-53. Although it is arguable that Dr. Wee's and Dr. Taylor's opinions as to Plaintiff's abilities to function support a finding that Plaintiff satisfied Listing 12.04, as noted above, the Commissioner had an adequate basis for rejecting those opinions. Therefore, the Commissioner did not err by failing to find that Plaintiff satisfied the Listings.

Plaintiff argues next that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question. Plaintiff's position is that while Judge Lombardo determined that he is able to perform work that involves simple repetitive tasks that is low stress, which she defined as no assembly line production quotas and no fast paced work, and

which involves only minimal contact with others, the hypothetical question she asked the VE included different limitations.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

Judge Lombardo presented the following hypothetical question to the VE: "Could you describe jobs in the regional economy at the medium and light levels with the following non-exertional limitations: simple, unskilled work, low stress, which is not assembly line production quotas, not fast paced and minimum contact with the general public, co-workers and supervisors?" PageID 119.[2]

Judge Lombardo determined that Plaintiff "is limited to simple, repetitive tasks [and] he is further limited to low stress work, which in this case is defined as no assembly line production quotas and no fast paced work. He is restricted to jobs that would require only minimal contact with

---

[2] In response, the VE identified 25,000 jobs which such a hypothetical person would be capable of performing. *Id.*

supervisors, co-workers and the general public." PageID 70.

Plaintiff's challenge is that Judge Lombardo's hypothetical question included the word "unskilled" while in her decision, Judge Lombardo found that Plaintiff is limited to performing "repetitive" tasks.

Limiting a claimant to "simple, repetitive, and routine tasks, simply means that [the claimant] is limited to unskilled ... work. *Allison v. Commissioner of Social Security,* No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000) citing 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Based on the authority of *Allison*, this Court concludes that for purposes of the Act, the phrase " repetitive tasks " is interchangeable the word "unskilled". Therefore, although Judge Lombardo determined that Plaintiff is limited to performing "repetitive tasks", her use of the word "unskilled" in her hypothetical question to the VE did not invalidate that question.

Accordingly, in determining that Plaintiff is not disabled, the Commissioner did not err by relying on the VE's testimony.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 23, 2012                                                                    s/ **Michael R. Merz**
                                                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).